UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CYTRIKA ROBINSON, *On Behalf of Herself and All Others Similarly Situated*,

Plaintiff,

v.

ROOT, INC.

and

CARET HOLDINGS, INC.,

Defendants.

Case No. 2:25-cv-01078-ALM-KAJ

Judge Algenon L. Marbley

Magistrate Judge Kimberly A. Jolson

**FIRST AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Now comes Plaintiff, Cytrika Robinson, by and through undersigned counsel, and for her Complaint against Defendants Root, Inc. and Caret Holdings, Inc., states and alleges the following:

## INTRODUCTION

1. This is a "collective action" instituted by Plaintiff as a result of Defendants' practices and policies of not paying their non-exempt employees, including Plaintiff and other similarly situated employees, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff also brings this action as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500, *et seq*.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant 28 U.S.C. § 1331, as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendants because its headquarters and principal place of business is in Ohio.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants' principal place of business is located in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

7. At all material times, Plaintiff is and was a citizen of the United States and a resident of Jackson County, Missouri.

8. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and Mo. Rev. Stat. § 290.500(3).

9. At all material times, Defendant Root, Inc. is and was a corporation for profit with its headquarters and principal place of business located at: 80 East Rich Street, Suite 500, Columbus, Ohio 43215.

10. At all material times, Defendant Caret Holdings, Inc. is and was a corporation for profit with its headquarters and principal place of business located at: 80 East Rich Street, Suite 500, Columbus, Ohio 43215.

11. At all material times, Defendant Caret Holdings, Inc. is and was a wholly owned subsidiary of Root, Inc.

12. Both Defendants may be served with process by serving their registered agent and/or authorized representative of service of process in the State of Ohio: Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.

13. At all material times, Defendants are and were an employers within the meaning of 29 U.S.C. § 203(d) and Mo. Rev. Stat. § 290.500(4).

14. At all material times, Defendant is and was an enterprise within the meaning of 29 U.S.C. § 203(r).

15. At all material times, Defendants are and were an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

16. At all material times, Defendants have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1) and are joint employers.

17. Defendants perform related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

18. Defendants operate with a high degree of interrelated and unified operations, share the same operating name (Root Insurance), have the same headquarters, officers, and executive leaders and, upon information and belief, share common personnel and labor policies emanating from a common or centralized source.

19. At all material times, Plaintiff and the putative collective and class members were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

20. Plaintiff's written consent to this action was filed on September 19, 2025. (Doc #: 1-1, PAGEID #: 15).

21. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

22. Defendants are an insurance company that employs customer service representatives across the country.

23. Defendants' customer service representatives work at call centers and/or remotely from their homes.

24. Defendants' customer services representatives provide services to Defendants' policyholders and prospective customers (e.g., by contacting and answering calls from existing and prospective customers, providing customers with information about Defendants' insurance products, answering questions about coverage options, providing quotes, researching customer records and vehicle information, gathering information needed to determine underwriting eligibility, investigating and troubleshooting customer issues, processing policies, etc.).

25. From approximately February 3, 2025 through April 1, 2025, Plaintiff was employed by Defendants as a customer service representative during which she worked remotely from her home in Grandview, Missouri.

26. Other similarly situated current and former employees of Defendants were employed as customer service representatives or performed the same or substantially similar tasks as customer service representatives.

27. Plaintiff and other similarly situated employees had the same and/or substantially similar job duties and responsibilities and were subjected to the same policies and procedures during their employment with Defendants.

28. Plaintiff and other similarly situated employees of Defendants are/were non-exempt employees under the FLSA.

29. Plaintiff and other similarly situated employees of Defendants are/were paid an hourly wage.

30. Plaintiff and other similarly situated employees were regularly scheduled to work 40 hours per workweek.

31. Plaintiff and other similarly situated employees of Defendants regularly worked more than 40 hours per workweek.

32. Plaintiff estimates that, on average, she has worked between approximately 42 and 44 hours or more per week.

**(Failure to Pay for Time Spent Starting and Logging Into Computer Systems, Applications, and Phone System)**

33. Plaintiff and other similarly situated employees were required by Defendants to perform unpaid work before clocking in each day, including but not limited to starting and logging into Defendants' computer systems, software applications, and phone system.

34. Specifically, before clocking in at the start of their shift each day, Plaintiff and others similarly situated were required to: boot up and log into their assigned work computer; type in their username and password to log into the operating system; secure a connection to

Defendants' virtual private network using an authentication process through which they would have to open a multifactor authentication application on a separate device (i.e., cell phone) to retrieve an authentication code which they would then type into the operating system on the computer to secure access to Defendants' server; open and log into numerous applications and programs that they were required to use to perform their customer service work, such as, but not limited to, a direct messaging program they were required to use to communicate with colleagues and supervisors regarding customer issues, a video conferencing software program, their email accounts, an agent support resource containing explanations of coverage and guidelines for quoting various products, and databases and websites from which they could retrieve customer or vehicle information (such as LexisNexis and a VIN decoder site); and then after having all the necessary applications and programs up and running, they could then open and login to Defendants' phone system, retrieve another authentication code from the authenticator application on their cell phone, which they would then have to type into Defendants' phone system before they could clock-in.

35. Defendants required Plaintiff and other similarly situated employees to be logged into, and have up and running, all of their essential work-related computer applications and programs prior to the start of their shift so they would be prepared to take calls as soon as their shift began, and prohibited them from clocking-in early to record their time spent performing this unpaid work.

36. Plaintiff was instructed by supervisors and trainers that customer service representatives were required to have all the necessary applications and programs up and running before logging into to Defendants' phone system to clock-in.

37. Defendants arbitrarily failed to count this necessary pre-shift work performed by Plaintiff and other similarly situated employees as "hours worked."

38. Plaintiff and other similarly situated employees performed this unpaid work every workday, and it constituted a part of their fixed and regular working time.

39. This unpaid work performed by Plaintiff and other similarly situated employees was practically ascertainable to Defendants.

40. There is no practical administrative difficulty of recording this unpaid work of Plaintiff's and other similarly situated employees. It could be precisely recorded for payroll purposes simply by allowing them to clock in and be paid before they started and logged into Defendants' computer systems, applications, and phone system.

41. This unpaid work performed by Plaintiff and other similarly situated employees constituted a part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

42. Moreover, this unpaid work is an integral and indispensable part of other principal activities performed by Plaintiff and other similarly situated employees. They cannot perform their work without logging into Defendants' computer systems, applications, programs, and phone system.

43. Plaintiff estimates that she spent approximately 10 to 20 minutes or more before her shift start times starting and logging into Defendants' computer systems, software applications/programs, and phone system each workday, which time was in addition to the hours she was scheduled to work, and thus, in addition to the 40 hours per week she spent working her scheduled shifts.

44. Plaintiff and other similarly situated employees were required to work off-the-clock before their scheduled shift start time in order to perform this unpaid work.

**(Failure to Pay for Time Spent on Post-Shift Calls, Shutting Down Computer Systems, Applications, and Phone System)**

45. Plaintiff and other similarly situated employees were required by Defendants to perform unpaid work after their shift ended each day including but not limited to shutting down and logging out of Defendants' computer systems, software applications/programs, and phone system.

46. Defendants required Plaintiff and other similarly situated to have the applications and programs up and running at all times that they were clocked-in during their scheduled shift, and thus, Plaintiff and other similarly situated employees were required to clock-out in the time keeping system before shutting down and logging out of the timekeeping system, applications/programs, operating system, and computer.

47. Defendants arbitrarily failed to count this work performed by Plaintiff and other similarly situated employees as "hours worked."

48. Plaintiff and other similarly situated employees performed this unpaid work every workday, and it constituted a part of their fixed and regular working time.

49. This unpaid work performed by Plaintiff and other similarly situated employees was practically ascertainable to Defendants.

50. There was no practical administrative difficulty of recording this unpaid work of Plaintiff and other similarly situated employees. It could have been precisely recorded for payroll purposes simply by allowing them to clock out after shutting down Defendants' computer systems, applications, and phone system.

51. This unpaid work performed by Plaintiff and other similarly situated employees constituted a part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

52. Moreover, this unpaid work was an integral and indispensable part of other principal activities performed by Plaintiff and other similarly situated employees.

53. Plaintiff estimates that she spent approximately 5 to 10 minutes after her shift logging out of and shutting down Defendants' computer systems, software applications, and phone system each workday, which time was in addition to the hours she was scheduled to work, and thus, in addition to the 40 hours per week she regularly spent working her scheduled shifts.

54. Plaintiff and other similarly situated employees were required to continue working off-the-clock after their scheduled shift stop time in order to perform this unpaid work.

**(Failure to Pay for Time Spent Working but not Logged Into Timekeeping System)**

55. Defendants utilized a timekeeping system such that Plaintiff and similarly situated employees were not paid for all hours worked.

56. Defendants paid Plaintiff and other similarly situated employees only for work performed while they were completely logged into Defendants' computer systems, software applications, and phone system.

57. Plaintiff and other similarly situated employees were not compensated for the time spent not logged into call programs or any other time spent working to log in or out of the computer systems, applications, and phone system.

**(Failure to Pay Overtime Compensation)**

58. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

59. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above (including booting up and logging into Defendants' computer

system, applications, programs, and phone system; shutting down Defendants' computer system, applications, programs, and phone system; and otherwise working while not completely logged into Defendants' computer system, applications, programs, and phone system) was in addition to the 40 or more hours they worked while clocked-in for their scheduled shift, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

**(Defendants Willfully Violated the FLSA)**

60. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA and MMWL.

61. Defendants knew and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the law.

62. Defendants had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid work referenced above and not compensating them for time spent performing such work.

63. Defendants, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 hours or more that Defendants scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

64. Defendants knew or should have known that its policies and practices violate the law, and Defendants did not make and have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law has carried out

its illegal pattern and practice of not paying its customer service representatives for all hours worked, including overtime (including time spent working to log in or out of the computer systems, applications, and phone system, and all other time spent working while not logged into Defendants' call programs). Defendants' method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

65. Defendants failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS

66. Plaintiff brings Count One of this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

67. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All former and current customer service representatives, and persons with jobs performing substantially identical functions and/or duties to customer service representatives, employed by Defendants in the United States at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("FLSA Class").

68. Plaintiff is unable to state at this time the exact size of the potential class, but upon information and belief, it consists of more than 100 individuals.

69. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are

similarly situated with regard to their wages and claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

70. These similarly situated employees are known to Defendants and are readily identifiable through Defendants' records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

71. Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other members of the class defined as:

> All former and current customer service representatives, and persons with jobs performing substantially identical functions and/or duties to customer service representatives, employed by Defendants in Missouri at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("Missouri Class").

72. The Missouri Class is so numerous that joinder of all class members is impracticable. Named Plaintiff Cytrika Robinson is unable to state at this time the exact size of the potential Missouri Class, but upon information and belief, it consists of at least 40 individuals.

73. There are questions of law or fact common to the Missouri Class, including but not limited to the following: (a) whether Defendants failed to pay overtime compensation to its customer representatives for hours worked in excess of 40 each workweek; and (b) what amount of monetary relief will compensate Plaintiff and other members of the Missouri Class for Defendants' violation of Mo. Rev. Stat. § 290.505, *et seq*.

74. The claims of the named Plaintiff are typical of the claims of other members of the Missouri Class. Named Plaintiff's claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of the other Missouri Class members.

75. The named Plaintiff will fairly and adequately protect the interests of the Missouri Class. Her interests are not antagonistic to, but rather are in unison with, the interests of the other Missouri Class members. The named Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Missouri Class in this case.

76. The questions of law or fact that are common to the Missouri Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Missouri Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Missouri Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Missouri Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE

**(Violations of Fair Labor Standards Act)**

78. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

79. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for work performed before clocking in and after clocking out each day violated the FLSA, 29 U.S.C. § 207, 29 C.F.R.§ 785.24.

80. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for all work performed each day violates the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 785.24.

81. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 in a workweek violates the FLSA, 29 U.S.C. § 207.

82. Defendants' actions and/or omissions were not in good faith.

83. By engaging in the above-mentioned conduct, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

84. As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

**(Violation of Missouri Minimum Wage Law)**

85. Plaintiff, on behalf of herself and the Missouri Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

86. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for work performed before clocking in and after clocking out each day violated the MMWL.

87. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for all work performed each day violates the MMWL.

88. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 in a workweek violates the MMWL, Mo. Rev. Stat. § 290.505.

89. As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the MMWL.

**PRAYER FOR RELIEF**

90. WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

(a) Issue an order permitting this litigation to proceed as a collective action;

(b) Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

(c) Issue an order certifying the Missouri Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

(d) Award Plaintiff and the classes she represents actual damages for unpaid wages;

(e) Award Plaintiff and the classes she represents statutory liquidated damages;

(f) Award Plaintiff and the Missouri Class liquidated damages in an amount equal to "twice the unpaid wages" pursuant to Mo. Rev. Stat. § 290.527;

(g) Award Plaintiff and the classes she represents pre- and post-judgment interest at the statutory rate;

(h) Award Plaintiff and the classes she represents attorneys' fees, costs, and disbursements; and

(i) Award Plaintiff and the classes she represents further and additional relief as this Court deems just and proper.

**JURY DEMAND**

91. Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

Respectfully submitted,

*/s/ Matthew S. Grimsley*

Matthew S. Grimsley (OH 0092942)
Anthony J. Lazzaro (OH 0077962)
Lori M. Griffin (OH 0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: (216) 696-5000
Facsimile: (216) 696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that on December 23, 2025, a true copy of the foregoing was filed electronically and served upon all counsel of record via the Court's CM/ECF electronic filing system. Parties may access the filing through the Court's system.

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (OH 0092942)

Attorney for Plaintiff